**Tagged Opinion**

ORDERED in the Southern District of Florida on _Sept 1, 2009_

/s/ John K. Olson
John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**TRAFFORD DISTRIBUTING CENTER, INC.** a/k/a **TRAFFORD DISTRIBUTION CENTER, INC.**,

    Debtor.
_____/

Case No.: 08-17980-BKC-JKO

Chapter 7

**SONEET R. KAPILA,** Trustee in Bankruptcy for **TRAFFORD DISTRIBUTING CENTER, INC.**,

    Plaintiff,
vs.

**H.J. HEINZ COMPANY,**

    Defendant.
_____/

Adv. Proc. No.: 08-1723-JKO-A

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION**

TO AMEND ANSWER TO DEFENDANT'S COUNTERCLAIM;
PLAINTIFF'S MOTION TO STRIKE AFFIDAVITS OF SUSAN SCOTT;
PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT AND
ALTERNATIVELY MOTION FOR PARTIAL SUMMARY JUDGMENT;
AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** is before me on Soneet R. Kapila's (the "Trustee") Amended Motion for Summary Judgment and Alternatively Motion for Partial Summary Judgment [DE 17]; H.J. Heinz Company, L.P.'s ("Heinz") Motion for Partial Summary Judgment [DE 35]; the Trustee's Motion to Strike Affidavits of Susan Scott [DE 60]; and the Trustee's Motion to Amend his Answer to Defendant's Counterclaim [DE 73]. For the reasons stated below, the Trustee's Motion to Strike Affidavits of Susan Scott is denied, the Trustee's Motion to Amend his Answer to Defendant's Counterclaim is granted, and the cross-motions for summary judgment are granted in part and denied in part.

## FACTS

### 1. Procedural history

On June 13, 2008, Trafford Distributing Center, Inc. (the "Debtor") filed a voluntary petition for chapter 11 bankruptcy relief under Title 11 of the United States Code (the "Bankruptcy Code"). *See* [DE 1] in the main case. On October 21, 2008, the Trustee brought this adversary proceeding by filing a complaint (the "Complaint") [DE 1] against Heinz, based upon the following grounds: declaratory relief pursuant to Federal Rule of Bankruptcy Procedure 7001(9), turnover pursuant to 11 U.S.C. § 542, breach of contract, quantum meruit, and promissory estoppel.

On November 21, 2008, the Trustee filed a motion for summary judgment and in the alternative a motion for partial summary judgment [DE 7]. On December 9, 2008, the Trustee filed an amended motion for summary judgment and in the alternative a motion for partial summary

judgment (the "Trustee's Motion") [DE 17]. H.J. Heinz Company ("Heinz") filed a response to the Trustee's Motion ("Heinz's Response") [DE 34] on January 8, 2009. On February 27, 2009, the Trustee filed a reply to Heinz's Response (the "Trustee's Reply") [DE 59]. On February 27, 2009, the Trustee and Heinz filed a joint stipulation of facts concerning the Trustee's Motion (the "Joint Stipulation") [DE 61].

On January 8, 2009, Heinz filed a motion for partial summary judgment ("Heinz's Motion") [DE 35]. On February 17, 2009, the Trustee filed a response to Heinz' Motion (the "Trustee's Response") [DE 58]. In turn, on March 5, 2009, Heinz filed a reply to the Trustee's Response ("Heinz's Reply") [DE 68]. On March 5, 2009, the Trustee and Heinz filed a joint stipulation of facts concerning Heinz's Motion [DE 67].[1]

Meanwhile, on December 1, 2008, Heinz filed a counterclaim against the debtor (the "Counterclaim") [DE 9]. The Trustee answered the Counterclaim [DE 18] on December 10, 2008. On March 13, 2009, the Trustee filed a motion to amend his answer to the Counterclaim (the "Trustee's Motion to Amend") [DE 73]. On April 6, 2009, Heinz filed a Response to the Trustee's Motion to Amend ("Heinz' Response to Trustee's Motion to Amend") [DE 77].

On February 27, 2009, the Trustee filed a motion to strike the affidavits of Susan Scott (the "Trustee's Motion to Strike") [DE 60]. On April 6, 2009, Heinz filed a Response to the Trustee's Motion to Strike ("Heinz' Response to Trustee's Motion to Strike") [DE 76].

**2. Facts as jointly stipulated by the parties**

The following relevant facts are set forth in the Joint Stipulation:

---

[1]The Joint Stipulation [DE 61] is substantially identical to this stipulation of facts and, for purposes of this memorandum opinion, I will only reference the Joint Stipulation.

Prior to the filing of the petition for relief, the Debtor provided its customers with warehouse/fulfillment services at a facility in Trafford, Pennsylvania. The Debtor and Heinz entered into a Fulfillment Warehouse Contract, which included the Heinz General Conditions, Form E-109-A, Request for Quotation and Competitive Bidding Event #971, Heinz Purchase - Rel #0700001252 000 March 7, 2003, and addendum dated December 20, 2005 (the "Contract"). *See* Joint Stipulation ¶ 6.

In 2008, Heinz utilized, on average, more than 70,000 square feet of the Debtor's warehouse to store its property. *Id.* at ¶ 7. The Debtor's Schedule B-2 lists a debt owed by Heinz in the amount of $231,062.42. *Id.* at ¶ 8. Prior to the filing of the bankruptcy case, neither Heinz nor Trafford had given notice of termination of the Agreement. *Id.* at ¶ 9. Upon the filing of its petition for bankruptcy relief, the Debtor ceased to perform under the Agreement. *Id.* at ¶ 10. However, Heinz has not, to date, filed a proof of claim in the Debtor's main bankruptcy case, nor has Heinz moved this court for relief from the automatic stay. *Id.* at ¶¶ 4-5.

On June 20, 2008, the Trustee filed - and, on June 24, 2008, this court granted - an emergency motion to allow Heinz access to property of the estate (i.e., the Debtor's warehouse) in order to permit removal of property, pursuant to this district's local rule 9075-1. *See* [DE12] and [DE 21] in the main case. The Trustee asked Heinz to remove all of its property from the subject warehouse by June 30, 2008, the date of expiration of the underlying lease for that property. *See* Joint Stipulation at ¶ 13. Heinz complied with this request. *Id.* at ¶ 14.

By emergency motion, on August 12, 2008, I granted the trustee an extension to assume or reject the executory contract with Heinz. *See* [DE 55] and [DE 62] in the main case.

On August 12, 2004, pursuant to Federal Rule of Bankruptcy Procedure 2004, the Trustee

conducted an examination *duces tecum* of an Officer, Director and Representative of the Debtor. In connection with this exam, William L. Armour, a consultant to the Debtor, produced a printout titled "Trafford Distribution H.J. Heinz Company 2003-2008" that he had received via e-mail, claiming Heinz owed the Debtor a balance of $253,886.85. *Id.* at ¶ 21. William L. Armour testified, at the same exam, that the balance on this printout was the true debt owed to the Debtor, and that the discrepancy between this amount and that on the Debtor's schedules was due to three invoices. *Id.* at ¶ 22.

Heinz seeks to setoff or recoup $236,061.02 that it paid to Knepper Press and Quality Lock.net to remove the company's property from the Debtor's warehouse. *Id.* at ¶ 26.

Pursuant to Federal Rule of Bankruptcy Procedure 7030, on February 30, 2009, counsel for the Trustee conducted a deposition of Susan Scott, the employee of Heinz who executed the affidavit supporting of Heinz's Response. *Id.* at ¶ 27.

## DISCUSSION

### 1. The affidavits of Susan Scott

On the record before me are two affidavits of Susan R. Scott ("Scott"); the first is affixed to Heinz's Response [DE 34] labeled as "Exhibit A" and also to Heinz's Motion [DE 35] labeled as "Exhibit A," and the second docketed on February 13, 2009, as a notice of filing [DE 56]. The Trustee's Motion to Strike urges me to pay no heed to these documents; Heinz's Response to the Trustee's Motion to Strike urges the opposite. The law affords me generous discretion in determining whether to strike these documents, and ultimately I am unpersuaded that any appreciable good would be achieved if I were to ignore them. These affidavits, when considered in concert with

the rest of the record, speak as much to relative credibility as they do to fact, suggesting the proper course of action is to consider them but to give them little weight in light of the affiant's modest personal knowledge of the facts at issue. There are clear inconsistencies between Scott's initial affidavit and the testimony she offered at an examination *duces tecum* conducted pursuant to Federal Rule of Bankruptcy Procedure 7030.

Many of those inconsistencies are apparently resolved in Scott's supplemental affidavit, filed a month after the deadline for such filing. The crux of the Trustee's argument with respect to that supplemental affidavit, however, appears to be that a certain prejudice would be necessarily incurred by my consideration of the document, since it was late filed. The Trustee's Motion to Strike cites no specific point of law for this argument, beyond reference to the briefing schedule I ordered for this case. Annoying as the untimely filing of an affidavit may be, no particular prejudice has been cited by the Trustee, and I will consider the supplemental affidavit. In doing so, I am governed by the instructions from the United States Court of Appeals for the Eleventh Circuit, which dictates, "A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. 'An opposing party's affidavit should be considered although it differs from or varies (from) his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.'" *Tippens v. Celotex Corporation,* 805 F.2d 949, 953 (11th Cir. 1986) (quoting 6 Moore's Federal Practice para. 56.15 (4) (2d ed. 1985) (footnote omitted)).

Moreover, and quite significantly, in light of the Joint Stipulation, the Scott affidavits are not nearly as relevant to the determination of these motions for summary judgment as they would be in an instance where no such joint stipulation was present. For the most part, I need not look to Scott's

affidavits for factual issues. Accordingly, I find the prejudice argument unavailing.

With regard to both affidavits, however, the Trustee also argues pursuant to Federal Rule of Civil Procedure 56(e)(1), incorporated by Federal Rule of Bankruptcy Procedure 7056, which states, in pertinent part, "[A] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The Trustee's argument, simply summarized, is that since the contents of the affidavits are not premised upon Scott's personal knowledge, the documents are, as such, inadmissable. I do not accept this line of reasoning.

As a matter of law, "[P]ersonal knowledge can come from review of the contents of [business] files and records." *Washington Central Railroad Co., Inc. v. National Mediation Board*, 830 F.Supp 1343, 1353 (E.D. Wash. 1993). *See also, Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174-1775 (D.C. Cir. 1981). Pursuant to Federal Rule of Evidence 803(6), business records are admissible and employees who have knowledge of the procedures governing the creation and maintenance of such records can testify as to their contents. To interpret Rule 803(6) as requiring that affiants be permitted to testify only to those bits of information to which they, personally, have borne witness would be to turn Rule 803(6) on its head and would create numerous substantive proof problems, especially for large enterprises. Allowing evidence from employees who have reviewed business records is what keeps corporate entities from having to track down former employees every time a subpoena is served regarding some menial aspect of their respective prior work; more broadly, review of records is what keeps major national entities from having to locate and produce the employee who personally put a subject bill or document in the mail to a customer. There is no allegation in the record that Scott is not qualified to testify on behalf of Heinz as to the

entity's business records.

I find that the initial Scott affidavit merely creates an issue of credibility and, moreover, that the second affidavit is properly a portion of the record to be considered. Accordingly, I will consider each of the Scott affidavits.

**2. Trustee's motion to amend**

The Trustee seeks to amend his response, changing two admissions to denials. Heinz, in turn, suggests that such an alteration at this point in the litigation may only be made with a showing of "good cause," and that no such showing is instantly manifest. In light of the relevant facts, the nature of the amendment being sought, and the applicable legal standard, I find that it is in the interest of justice to permit these alterations.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), incorporated by the Federal Rule of Bankruptcy Procedure 7015, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." In a case cited by both Heinz and the Trustee, the United States District Court for the District of Maine held, "This is a relatively low standard, but it becomes compounded with a higher standard once the deadline to amend passes because a scheduling order 'shall not be modified except upon a showing of good cause.'" *El-Hajj v. Fortis Benefits Ins. Co.*, 156 F.Supp.2d 27, 34 (D. Maine 2001) (quoting FED. R. CIV. P. 16(b)(4)). However, "In the absence of substantial or undue prejudice to the nonmoving party - which 'is the touchstone for the denial of an amendment' - 'denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.'" *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3rd Cir. 2004) (internal citations omitted).

Here, the Trustee seeks to make two amendments. First, he seeks to change the twenty-fourth paragraph of his answer, which currently reads, "The Trustee denies that the Debtor owes Heinz the amount of $236,061.02. To the extent that a response is required, the Trustee admits that any amount owed to Heinz constitutes a pre-petition rejection damages claim." [DE 18]. The Trustee seeks to amend this document such that the word "admits" shall be changed to the word "denies." [DE 73]. Second, the Trustee seeks to change the forty-third paragraph of his answer, which currently reads, "Paragraph 105 of the Counterclaim is admitted." [DE 18]. The Trustee seeks to amend this document such that the word "admitted" shall be changed to the word "denied." [DE 73].

These are entirely reasonable requests on the part of the Trustee, and fairly innocuous ones at that. As a matter of law, I find that permitting these amendments is in the interest of justice, that good cause exists for their amendment, that neither substantial nor undue prejudice will be incurred by their allowance, and that their underlying motivation is neither rooted in bad faith nor generally dilatory in nature.

### 3. Legal standard for summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits (if any) show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The Supreme

Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable doubts in that party's favor. *See also, Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988) (internal citations omitted). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324.; *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[2] By its very terms the standard for summary

---

[2] Fifth Circuit Decisions entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

judgment provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id.* at 248.

Situations in which opposing parties are simultaneously moving for summary judgment are particularly challenging inasmuch as "[c]ross-motions for summary judgment can be difficult to resolve because '[i]nferences to which a party is entitled with respect to the opponent's motion may not be granted with respect to its own.'" *In re The IT Group, Inc.*, 350 B.R. 166, 170 (Bankr. D. Del. 2006) (quoting *Interbusiness Bank, N.A. v. First Nat'l Bank*, 318 F.Supp 2d 230, 236 (M.D. Pa. 2004)). Given the extensive nature of the Joint Stipulation and the record here, there exists no genuine issue as to material facts with regard to certain counts, and, thus, I find the competing motions for summary judgment are ripe for adjudication as a matter of law.

### 4. Recoupment

In Count I of the Complaint, the Trustee seeks a declaratory judgment finding that, as a matter of law, recoupment is not an appropriate defense to the Trustee's claims. *See* [DE 17] and [DE 58]. Heinz, conversely, urges that it should be permitted to recoup those expenses it incurred as a result of the Debtor's non-performance under the Contract. *See* [DE 34] and [DE 35]. Inasmuch as a proper claim for recoupment is premised upon the subject claims arising from the same transaction, I find that the assertion of such a defense fails here.

The basic facts relevant to this count are, (1) The Contract required the Debtor to undertake

a certain performance, (2) Such performance was neglected following the commencement of the bankruptcy case, and (3) Heinz incurred certain costs as a direct result of that failure to perform. *See, e.g.,* those facts provided above. The only issue of import not manifest from the Joint Stipulation is whether the Contract created a legal reality whereby costs attendant to a breach would arise under the same transaction as debts incurred during the ordinary existence of the agreement itself. It is evident from the record that Heinz bound itself to compensate the Debtor upon receipt of certain monthly invoices. Accordingly, it is evident that damages arising from post-petition non-performance (i.e., the costs incurred by Heinz to remove its property from the Debtor's premises) under the contract do not intimately correlate to the Debtor's normative daily operations under the Contract. Recoupment may have been applicable in this case had there occurred a situation where damages directly arose to Heinz's inventory as a result of negligent storage on the part of the Debtor. However, this is a radically different scenario than that which gives rise to the breach here.

There does exist a judicial interest in permitting claims of recoupment where appropriate, inasmuch as "[T]he doctrine of recoupment tends to promote justice, prevent litigation, avoid circuity of action and multiplicity of suits, by adjusting in one action adverse claims growing out of the same subject matter." *Burroughs v. Clancey*, 53 Ill. 30, 34 (Ill. 1869). However, as has been observed by the Supreme Court of the United States, "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S. 247, 262 (1935). As the United States Court of Appeals for the Eleventh Circuit instructs, in order for a claim of recoupment to stand, one must show that, "[T]he ... violation and the creditor's debt claim arose from the same transaction, (2) [the creditor] is asserting [its] claim as a *defense*, and (3) the 'main action' is timely. All three requirements must be satisfied."

*In re Smith*, 737 F.2d 1549, 1553 (11th Cir. 1984) (emphasis present in original).

As has been noted by the United States District Court for the Eastern District of Pennsylvania, "The determination of whether an action will be characterized either as a setoff or as a recoupment depends on whether the reciprocal obligations arose from the same transaction or series of transactions." *Westinghouse Electric Corporation v. Fidelity and Deposit Company of Maryland*, 63 B.R. 18, 21 (E.D. Penn. 1986). However, "The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims . . . does not mean that the two arose from the 'same transaction.'" *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir. 1984).

Such is very much the case here, where the existence of two contractually-bound parties and their underlying agreement does not alone sufficiently conflate the two debts. Rather, although the underlying agreement gave rise to a series of transactions in which Heinz would compensate the Debtor, *these* debts arose from operations so separate and distinct from the rejection damages claimed by Heinz that recoupment cannot be properly asserted here.

### 5. Setoff

Heinz has asserted a right to setoff (against any recovery by the trustee) those expenses it incurred as a result of the Debtor's non-performance under the Contract following the petition for bankruptcy relief. *See* [DE 9] and [DE 34]. The Trustee, in turn, asserts that Heinz enjoys no such right. *See* [DE 17] and [DE 58].

As was recognized by the Supreme Court of Errors of Connecticut, "The policy of the law is always to prevent unnecessary litigation, and where in a pending suit entire justice can be done to both of the parties before the court, by the ascertainment and set-off of their mutual claims against each other, without violation of any of the settled rules or form of law, such set-off ought always to

be made." *Avery v. Brown*, 31 Conn. 398, 401 (Conn. 1863). This strong policy interest is aptly memorialized in the Bankruptcy Code, which explicitly preserves those rights of setoff otherwise enjoyed by creditors. *See* 11 U.S.C. § 553, subject to certain critical restrictions. This provision "incorporates and preserves in bankruptcy law the right of setoff available at common law." *In re Bevill*, 896 F.2d 54, 57 (3rd Cir. 1990) (citing *United States v. Norton*, 717 F.2d 767, 772 (3rd Cir. 1983)). "However, setoff is at odds with a fundamental policy of bankruptcy, equality among creditors, because it 'permits a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor, i.e., in effect, the creditor receives a 'preference'.' The provision is permissive rather than mandatory, and cannot be invoked in a case where the general principles of setoff would not justify it." *Bevill* at 57 (quoting *In re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr. N.D. Tex. 1984); citing *Norton* at 772).

A right to set-off has a long history in American jurisprudence. Some parameters have come to necessarily encompass the invocation of this right, and many courts have provided clarity, over time, to the demands underlying this defense. The Supreme Court of the United States, ruling in a bankruptcy matter 120 years ago, instructed, "To authorize a set-off there must be mutual credits or mutual debts." *Libby v. Hopkins*, 104 U.S. 303, 309 (1881). Moreover, the United States Court of Appeals for the Eleventh Circuit instructs, "In preserving the right of setoff, Section 553 requires that the obligation between the debtor and creditor arose before filing the bankruptcy petition and that mutuality of obligation exists." *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992). The precise statutory language in § 553(a) states that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the

commencement of the case," with certain exceptions not relevant here.

The legal issue presented in this case is whether damages arising from the Trustee's rejection of the underlying contract with Heinz "arose before the commencement of the case" within the meaning of § 553(a). The rejection itself, of course, occurred after the commencement of the case, and only after the Trustee sought and was granted authority to do so. The problem arises under § 502(g)(1), which provides in relevant part:

> A claim arising from the rejection, under section 365 of this title ... of an executory contract ... that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section ***the same as if such claim had arisen before the date of the filing of the petition.*** [Emphasis added.]

Judge Hardin, of the United States Bankruptcy Court for the Southern District of New York, has addressed this precise issue, holding, "I conclude that (1) as a matter of law rejection damages under *Section 365(g) and 502(g)* may not be set off against a pre-petition claim or debt and (2) in any event, on the facts present here, the credits in question were not debts or claims that existed or 'arose' pre-petition." *In re Delta Air Lines, Inc.*, 341 B.R. 439, 441 (Bankr. S.D.N.Y. 2006).

By contrast, the United States Court of Appeals for the First Circuit, in analyzing this same issue, has held, "[W]hen triggered by a timely postpetition rejection, the relation-back rule serves to transform a future action for breach of an executory contract into a prepetition claim subject to setoff." *In re Public Service Company of New Hampshire*, 884 F.2d 11, 15 (1st Cir. 1989). This sentiment has been echoed by the United States Bankruptcy Court for the District of Delaware, in an opinion that declined to follow *Delta*, in which the court stated:

> Congress has defined 'debt' and 'claim' broadly in section 101 of the Code to include unmatured, contingent, disputed, and unliquidated claims. Sections 365(g) and 502(g) provide that a rejection damages claim shall be treated as if it arose

-15-

pre-petition. Consequently, the Court concludes that for purposes of section 553, a rejection damages claim is a prepetition claim subject to setoff against any pre-petition debt owed by the creditor to the debtor.

*In re Communication Dynamics, Inc.*, 382 B.R. 219, 232 (Bankr. D. Del. 2008). Other courts have reached similar holdings, concluding rejections damages to be permissively setoff against pre-petition debts and claims. *See, e.g., In re Express Freight Lines*, 130 B.R. 288, 293 (Bankr. E.D. Wis. 1991). I conclude from the express language of §§ 365(g) and 502(g) that damages arising from the post-petition rejection of an executory contract are deemed to have arisen "before the commencement of the case." Because rejection damages are deemed to accrue pre-petition they may be setoff against other pre-petition debts and claims, provided the requisite mutuality of obligation is found to exist. There is no issue of mutuality in this case. Setoff is an appropriately invoked affirmative defense on the part of Heinz. Accordingly, I find as a matter of law that Heinz may setoff damages arising from the removal of property from the Debtor's facility against funds owed the Debtor in the form of outstanding invoices arising under the Contract.

### 6. Conclusion

Having established that Heinz may assert an affirmative defense of setoff, much of the Complaint serves to resolve itself. As set forth above, summary judgment on Count I of the Complaint is appropriate in favor of the Trustee, with the assertion of a recoupment defense failing as a matter of law. Count II of the Complaint for turnover of property is appropriate except to the extent Heinz may rightfully assert a setoff claim for rejection damages.

The Complaint also contains counts for quantum meruit and promissory estoppel. These two claims require no complicated analysis herein: because there is an express contract between the parties, no quasi-contract claim may be asserted. *See, e.g., Kane Enterprises v. MacGregor (USA)*

-16-

*Inc.*, 322 F.3d 371, 376 (5th Cir. 2003) (an express contract preempts a cause of action for quantum meruit); *Mobil Oil Corporation v. Dade County Esoil Management Co., Inc.*, 982 F.Supp 873, 880 (S.D. Fla. 1997) (an express contract preempts a cause of action for promissory estoppel).

Finally, I will withhold final ruling and deny summary judgement with regard to two surviving counts in the Complaint. First, there is apparently a dispute as to which invoices were outstanding at the time of the bankruptcy petition – thus potentially creating a situation whereby Heinz was in breach of contract – and, if so, the extent to which that breach resulted in certain damages is likewise unclear based on the record before me. Second, a portion of the count for turnover of property may well survive this ruling to the extent to that there is a balance due to the estate after Heinz has exercised its setoff rights. An evidentiary hearing will apparently be needed.

Based on the discussion above it is **SO ORDERED**. I will enter separate orders this day ruling on the issues raised above.

### #

Copies furnished to:

Victor R Berwin
222 Lakeview Ave # 800
West Palm Beach, FL 33401

Frank Terzo, Esq.
1221 Brickell Ave #1650
Miami, FL 33131

Attorney Berwin is directed to serve a conformed copy of this order on all other interested parties.